T.C. Memo. 2004-175

UNITED STATES TAX COURT

KENNETH J. BARELA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3873-02.                  Filed July 28, 2004.

Kenneth J. Barela, pro se.

<u>Frederick J. Lockhart, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Chief Judge</u>:  Respondent, for petitioner's 1999 taxable year, determined a $49,703 income tax deficiency and additions to tax under sections 6651(a)(1)[1] and 6654 in the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

amounts of $9,201.60 and $1,916.96, respectively.  The issues for our consideration are:  (1) Whether petitioner is entitled to itemized and Schedule C deductions in excess of those allowed or conceded by respondent; and (2) whether petitioner and respondent, as part of the settlement of petitioner's 1998 tax controversy, had agreed to allow for 1999 a $5,433 loss that had been claimed and disallowed for 1998.

## FINDINGS OF FACT[2]

Petitioner resided in Littleton, Colorado, when he filed his petition with this Court.  Petitioner's 1999 joint Federal income tax return was filed on April 4, 2003.[3]  During 1999, petitioner was a sales manager and employee of Cochlear Corporation and received a $137,604 salary.  Petitioner also received interest income of $401 in 1999.

Respondent determined a $49,703 income tax deficiency for petitioner's 1999 taxable year, and petitioner contested the entire amount.  Prior to trial, respondent allowed the following itemized deductions:  $7,326 for medical and dental; $1,935 for State and local taxes; $3,119 for real estate taxes; $1,783 for other taxes; $22,481 for home mortgage interest; $15,900 for charitable contributions; and $13,765 for miscellaneous

_____

[2] The parties' Stipulation of Facts is incorporated by this reference.

[3] Although a joint return was filed, Mrs. Barela is not a party to this action.

deductions subject to the 2-percent AGI limitation. Petitioner was unable to substantiate any of the above-described itemized deductions in excess of the amounts allowed by respondent.

Petitioner originally claimed $3,915 for employee business vehicle expense and $2,194 for his wife's car and truck expenses. Petitioner has shown entitlement to $5,498 for his employee business vehicle expense and to $6,951 for his wife's car and truck expenses.

Respondent determined that for petitioner's 1999 taxable year, he was liable for additions to tax under sections 6651(a)(1) and 6654. Petitioner concedes that he is liable for both additions to tax.

In a prior case, petitioner petitioned this Court seeking a redetermination of a 1998 income tax deficiency determined by respondent. The 1998 case was resolved by means of a settlement entered into by petitioner and respondent on May 1, 2002. This Court entered the parties' stipulated decision on May 3, 2002. The decision entered for petitioner's 1998 taxable year resulted in a $48,767 income tax deficiency and a $5,601 section 6651(a)(1) addition to the tax.

One of the items resolved by the 1998 decision was respondent's disallowance of a $5,433[4] loss claimed on Schedule C

---

[4] Petitioner originally claimed $5,779. Respondent allowed $346 which reduced the disallowed loss to $5,433.

regarding petitioner's wife's furniture business. During 1998, petitioner's wife attempted to begin a business that would sell fabric covered stools. A large portion of the $5,433 was spent on stools and the craft materials needed for covering the stools. She also claimed travel expenses for promoting her product. Respondent disallowed the $5,433 amount claimed on the ground that the activity was not yet a business; i.e., it was in a startup phase and the expenditures were capital in nature.

In negotiating the 1998 settlement, the parties came to an agreement as to which deductions would be allowed and disallowed. Among other items, the parties agreed to the disallowance of the $5,433 deduction in exchange for the allowance of certain other losses claimed by petitioner. Petitioner and his accountant, Mr. Koll, were under the impression that the terms of the agreement included respondent's agreement to allow the $5,433 deduction for 1999.

During the negotiations, Mr. Koll suggested that petitioners be allowed to deduct the $5,433 for the 1999 tax year. Respondent's counsel and Appeals officer did not make a response or expressly agree to Mr. Koll's proposal. Because respondent's counsel and the Appeals officer were silent, petitioner and Mr. Koll had the impression that an agreement had been reached. Later in the negotiations, respondent's counsel and the Appeals officer informed petitioner and Mr. Koll that the $5,433 loss

might be allowable for a subsequent year, but not necessarily for 1999.

When the parties concluded their negotiations, respondent's counsel prepared a decision document incorporating the parties' agreement. The decision document did not contain any reference to the $5,433 loss's being allowed for 1999. Both parties read and signed this document in settlement of petitioner's 1998 taxable year.

Mr. Koll later thought it would be wise to have a written record of the agreement that he believed existed. Mr. Koll addressed a letter to respondent's counsel wherein he listed the settlement issues that he believed were resolved under the settlement. In particular, Mr. Koll stated: "The Schedule C losses of Katy's Furniture of $5,433 will be disallowed in 1998 but this amount will be allowed in 1999 as a deduction". Mr. Koll prepared this document on May 1, 2002, and faxed it to respondent's counsel during the morning of May 2, 2002.

Respondent's counsel filed the stipulated decision document with this Court on the morning of May 2, 2002. At the time respondent's counsel presented the stipulated decision to the Court, he was not aware of Mr. Koll's faxed letter. After submitting the stipulated decision, respondent's counsel learned of the faxed letter and on May 2, 2002, he composed a response and faxed it to Mr. Koll. Respondent's letter, in pertinent

part, stated:

> However, <u>at no time</u> did I agree, or express an opinion, as to a particular year in which the expenditures at issue (which I consider to be capital) would be deductible, since this would be based upon facts and circumstances that I am not now aware of, or at least aware of in total.  I think that any such conclusion as to the proper year is premature by any of us since not all of the Barela tax returns (including, in particular, the return for calendar year 1999) have yet been filed, let alone reviewed by Eric or me.

Neither Mr. Koll nor petitioner attempted to respond, or dispute the contentions in respondent's letter.  Petitioner did not seek to withdraw or to have vacated the decision entered for 1998.

Petitioner filed his 1999 Federal tax return during April 2003 and claimed in that return the $5,433 loss disallowed for 1998.  Petitioner contends that an agreement was reached with respondent providing that the $5,433 amount would be allowed for 1999.  Respondent denies the existence of such an agreement. Petitioner timely appealed to this Court for review of respondent's determination for 1999.

OPINION

The controversy in this case involves two issues.  Firstly, whether petitioner is entitled to itemized deductions in excess of those allowed or conceded by respondent.  The second issue concerns whether there was an agreement between petitioner and respondent with respect to the deductibility of the $5,433 for the 1999 year.  As a preliminary matter, we note that petitioner

conceded that the additions to tax for his 1999 taxable year under sections 6651(a)(1) and 6654 apply to any underpayment finally decided by the Court.

Itemized and Schedule C Deductions

In his petition, petitioner contends that respondent's adjustments for itemized deductions are incorrect and that petitioner is entitled to the full amount of deductions claimed. Prior to trial, respondent allowed the following itemized deductions:

| Itemized Deductions | Amount |
|---|---|
| Medical and dental | $7,326 |
| State and local taxes | 1,935 |
| Real estate taxes | 3,119 |
| Other taxes | 1,783 |
| Home mortgage interest | 22,481 |
| Charitable contributions | 15,900 |
| Miscellaneous deductions subject to the 2% AGI limitation | 13,765 |
| Total | $66,309 |

Petitioner was able to provide substantiation for the above amounts but did not show entitlement to amounts in excess of the those allowed by respondent.

Tax deductions are a matter of legislative grace with a taxpayer bearing the burden of proving entitlement to the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rule 142(a)(1). A taxpayer bears the burden of substantiating the amount and purpose of any claimed deduction.

See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).[5]  A taxpayer is required to maintain sufficient records to establish the amounts of income and deductions.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs.  Therefore, petitioner must produce evidence that he is entitled to deductions in excess of what he has thus far been able to substantiate.

At trial, petitioner did not offer evidence supporting his claim for the above-described itemized deductions in excess of those allowed or agreed to by respondent.  See Hradesky v. Commissioner, supra.  Because petitioner has failed to provide any substantiation to support such itemized deductions in excess of those allowed, we sustain respondent's position with respect to those itemized deductions.

Petitioner further contends that he is entitled to increased deductions with regard to his vehicle expenses claimed as a business deduction on Schedule C of his 1999 return.  At trial, petitioner substantiated by means of documentary evidence amounts in excess of those previously claimed for vehicle expenses.  On his 1999 return, petitioner claimed $3,915 for employee business vehicle expense and $2,194 for his wife's car and truck expenses.

_____

[5] No question has been raised with respect to the burden of proof or production under sec. 7491(a).

Petitioner produced records at trial supporting a $5,498 deduction for his employee business vehicle expenses and $6,951 for his wife's car and truck expenses.

Based on petitioner's substantiation offered at trial, respondent conceded that petitioner is entitled to the increased amounts for his employee business vehicle expenses and for his wife's car and truck expenses.

Prior Year Loss per Settlement

Background

Petitioner claimed $5,779 on Schedule C of his 1999 return described as "prior year loss per settlement". Of that amount, $5,433 represented petitioner's wife's claimed loss, the disallowance of which was agreed to in the settlement of petitioner's 1998 case. Petitioner claimed the loss for 1999 in the belief that in the settlement of the 1998 tax liability, respondent had agreed that petitioner could claim the $5,433 for 1999. Respondent had disallowed petitioner's wife's 1998 claimed loss on the ground that the activity was not yet a business and the loss, therefore, represented startup costs. Respondent also disallowed the same $5,433 loss claimed for 1999 on the basis that it was not allowable for 1999 and because respondent did not agree in the 1998 settlement that the loss was allowable for 1999.

In negotiating the 1998 settlement, petitioner agreed to the disallowance of the $5,433 loss for 1998. Petitioner, however, contends that prior to signing the stipulated decision, an agreement was reached to allow the $5,433 deduction for 1999. Petitioner contends that respondent has breached the terms of the parties' settlement agreement. Petitioner further asserts that the alleged agreement should be enforced, allowing the deduction for 1999. Petitioner has advanced no other reason for the allowance of the $5,433 loss for 1999.

Analysis

At the heart of this controversy is the question of whether a binding agreement[6] was reached between petitioner and respondent to allow the 1998 loss deduction, in the amount of $5,433 for 1999. In resolving this question, we apply general principles of contract law in determining whether a settlement agreement has been reached. Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320, 330 (1997), affd. 208 F.3d 205 (3d Cir. 2000). Formation of a contract requires the mutual assent of the parties to its essential terms, and mutual assent generally requires an offer and an acceptance. Id.

---

[6] On brief respondent raises alternative defenses to the alleged contract. We need not address these arguments as the general principles of contract law are sufficient to guide us in our holding on this issue.

Petitioner alleges that his agreement to the disallowance of the $5,433 loss for 1998 was bargained for in exchange for respondent's agreement to allow the deduction for 1999. For such a contract to exist and be binding, both parties must have agreed to the above-stated essential terms. To determine if there was mutual assent between the parties we must decide whether an offer and acceptance occurred.

An offer is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Id. (quoting 1 Restatement, Contracts 2d, sec. 24 (1981)). Petitioner, through Mr. Koll, made the following proposal: "Here's what I'm suggesting. You will allow Barela's loss, disallow Mrs. Barela's loss, but allow it to her in 1999, and we'll agree to that $7,000 Schedule A adjustment and two other minor items".

Even if we were to find that a valid offer was made, it must be shown that respondent accepted it by manifesting his assent to the offer. A prerequisite to the formation of an agreement is an objective manifestation of mutual assent to its essential terms, also known as a "meeting of the minds". Estate of Halder v. Commissioner, T.C. Memo. 2003-84 (citing various cases).

On that point, respondent's counsel and the Appeals officer indicated that the 1998 loss might be allowable in a subsequent

- 12 -

year, but not necessarily for 1999.  Respondent's statement reflects that no assent was intended.  In these circumstances, without some affirmative assent by respondent, there could be no meeting of the minds.  A contract was not created, and thus a settlement agreement was not reached.

The parties agreed to the stipulated decision for 1998. Conspicuously absent from the decision documents was any express agreement or closing agreement regarding the allowance of the $5,433 for 1999.  The parties' postnegotiation exchange of writings also illustrates that a meeting of the minds had not occurred between the parties.  Mr. Koll, on behalf of petitioner, faxed a letter to respondent's counsel in an attempt to document the agreement that he believed existed.  Specifically, the letter stated, in pertinent part, that "The Schedule C losses of Katy's Furniture of $5,433 will be disallowed in 1998 but this amount will be allowed in 1999 as a deduction".  Mr. Koll executed this document on May 1, 2002, and faxed it to respondent's counsel the morning of May 2, 2002, but respondent's counsel was not aware of Mr. Koll's fax when the decision document was filed with the Court during the morning of May 2, 2002.[7]

Also on May 2, 2002, after the decision document had been filed and respondent's counsel had become aware of Mr. Koll's

_____

[7] The decision document was not entered by this Court until May 3, 2002.

fax, respondent faxed the following response to Mr. Koll:

> However, <u>at no time</u> did I agree, or express an opinion, as to a particular year in which the expenditures at issue (which I consider to be capital) would be deductible, since this would be based upon facts and circumstances that I am not now aware of, or at least aware of in total.  I think that any such conclusion as to the proper year is premature by any of us since not all of the Barela tax returns (including, in particular, the return for calendar year 1999) have yet been filed, let alone reviewed by Eric or me.

Respondent's letter is consistent with respondent's response to petitioner's proposal during the negotiations.  Upon receipt of respondent's letter neither Mr. Koll nor petitioner made any attempt to respond, rebut, or dispute the contentions in respondent's letter.  Further, petitioner did not move to withdraw or to vacate the entered decision for 1998.

Accordingly, we hold that the parties did not reach a binding agreement as to the allowance of the $5,433 loss. Petitioner has not otherwise shown entitlement to said loss for 1999 and is not entitled to deduct the $5,433 amount on his 1999 return.

We have considered all other arguments advanced by the parties, and, to the extent that we have not addressed these arguments, we consider them irrelevant, moot, or without merit.

<u>Decision will be entered</u>

<u>under Rule 155.</u>